Nicholas R. SMITH, Appellant,

v.

STATE of Alaska, Appellee.

No. 7695.

Court of Appeals of Alaska.

June 1, 1984.

Brad J. Brinkman and Margaret Berck, Asst. Public Defenders, Juneau, and Dana Fabe, Public Defender, Anchorage, for appellant.

Richard Svobodny, Asst. Dist. Atty., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Nicholas R. Smith pled no contest to one count of third-degree assault, AS 11.41.220. Superior Court Judge Walter L. Carpeneti sentenced Smith to four years' imprisonment with one and one-half years suspended. Smith appeals his sentence as excessive under *Austin v. State,* 627 P.2d 657 (Alaska App.1981) and *State v. Chaney,* 477 P.2d 441 (Alaska 1970). We affirm.

Smith's offense arose from a domestic dispute in Juneau, Alaska. On the afternoon of September 26, 1982, Smith telephoned his wife, Melody Gay Smith, to tell her he would be late; they began quarreling. Later that evening at the Imperial Bar, Smith and his wife began to argue again. They continued their argument outside the bar and then they separated; each spent the rest of the evening in a different bar. At approximately 2:00 o'clock in the morning, Smith's wife and Tamara Henkins, who was living with the Smiths, re-

turned home. Smith returned shortly thereafter. Smith and his wife argued again, and after several minutes, Smith's wife left the house. Smith went to bed. Approximately fifteen minutes later, Smith's wife returned. Henkins told her that Smith planned to leave her the next day. Smith's wife went to the bedroom, which was on the second floor, and got into bed. She told Smith that she knew he was going to leave her. Smith rolled over and pointed a loaded .357 magnum revolver at her.

Smith's wife ran downstairs and asked Henkins to call the police. After Henkins made the call, Smith, armed with the revolver, came downstairs and tore the phone off of the wall. He went back upstairs; his wife ran outside.

Donald H. Bowman, a uniformed Alaska State Trooper, responded to the call from Henkins; he met Smith's wife just outside the house, as she emerged. Smith appeared in the second floor window, and Bowman, who was about twenty-five yards away, repeatedly asked him to come outside. Bowman directed his flashlight on Smith and told him that he wanted to speak to him.[1] Smith was upset. He yelled at his wife because she called the troopers. He also cursed Bowman and told him that he had no business being at his home. Smith then knocked out the window screen and fired a shot in Bowman's direction. Bowman fired a single shot in return. By this time other troopers had arrived, and they eventually persuaded Smith to unload the revolver and throw it out the window. A breathalyzer test given to Smith following his arrest indicated a .12 blood-alcohol level.

Smith was subsequently charged with two counts of third-degree assault. He pled *nolo contendere* to the count involving Bowman and the state dismissed the count that alleged an assault on his wife. This sentence appeal followed.

In arguing that his sentence of four years with one and one-half years suspended was excessive, Smith relies on *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App. 1981), where we stated:

> Normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear this rule should be violated only in an exceptional case.

Smith contends that if he had been a second felony offender, his presumptive sentence would have been two years' incarceration. AS 12.55.125(e). He argues that this case is not exceptional within the meaning of *Austin*, and he concludes that the sentencing court erred in imposing a sentence greater than the presumptive term for a second offender.

 We disagree. In a non-presumptive case, it is within the sentencing court's discretion to exceed the presumptive sentence for second offenders where the record indicates that the case is exceptional. We have previously noted:

> In deciding whether a first felony offense is exceptional under *Austin*, the sentencing court should determine whether any of the aggravating factors specified in AS 12.55.155(c) would be applicable to the case if it were subject to presumptive sentencing. The court should also decide whether any additional, unspecified aggravating factors would justify referral to a three-judge sentencing panel pursuant to AS 12.55.-165 if presumptive sentencing were applicable to the case. *Peetook v. State*, 655 P.2d 1308, 1310 (Alaska App.1982); *Sears v. State*, 653 P.2d 349, 350 (Alaska App.1982).

*Maal v. State*, 670 P.2d 708, 710 (Alaska App.1983). At the time of sentencing, Judge Carpeneti expressly concluded that Smith's case was exceptional. This conclusion was based on the finding of a specific aggravating factor: that Smith's assault was knowingly directed at a law enforce-

---

**1.** Bowman testified at the sentencing hearing that he could not recall if he had identified himself. However, at the preliminary hearing

Bowman testified that he was positive that he had.

ment officer. *See* former AS 12.55.-155(c)(13).[2] Before pronouncing sentence, Judge Carpeneti stated:

> I believe, Mr. Smith, that you knew Trooper Bowman was a trooper at the time you directed the shot in his direction. I reached that conclusion for a number of reasons, the first is that he was within eyesight. I understand the testimony that he was shining a light in your eyes, but that is the first reason.
>
> The second is that he was there in response to a call and you were, the testimony showed, angry with your wife for that call and berating her for it at the time that you and Trooper Bowman were having the conversation. And the inference to me just seems overwhelming that you would have had to have known, under those circumstances, that Trooper Bowman was indeed a law enforcement officer, and that was the cause of your irritation with her.
>
> . . . .
>
> I think it is sufficient that there is a finding, and I am prepared to make a finding and do, that you fired the gun in the direction of the officer, in his general direction. Certainly all parties agree that it was fired in his general direction and in line with him on a vertical plane.
>
> I cannot decide from the evidence that has been submitted, because it is not sufficient ... to make a determination as to whether the gun was at this angle or at that angle, and I'm indicating with my hand a difference of just a few degrees, and that's all it would have taken for the shot to be fired either directly, precisely at Trooper Bowman, or above his head, as you've testified you fired. And, so,

because the evidence is insufficient, I do not make that finding, but I don't think that I have to. I think it is sufficient, under the law, when the law says the conduct was knowingly directed at a law enforcement officer that firing on the same vertical plane that he is on and otherwise in his direction is certainly sufficient.

■ Smith argues that Judge Carpeneti erred by not indicating that he found the aggravating factor by "clear and convincing evidence." *See Juneby v. State*, 641 P.2d 823 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App. 1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983); AS 12.55.155(f). However, Judge Carpeneti did find that there was overwhelming circumstantial evidence indicating that Smith knew Trooper Bowman was a law enforcement officer. We conclude that Judge Carpeneti's finding of an aggravating factor was not clearly erroneous.[3] *See Juneby*, 641 P.2d at 834. Furthermore, given the seriousness of this aggravating factor, we are satisfied that the record justified a finding of exceptional circumstances under *Austin*. *See e.g., Maal v. State*, 670 P.2d 708, 710–11 (Alaska App.1983); *Qualle v. State*, 652 P.2d 481, 485–86 (Alaska App.1982).

■ Smith also argues that, in imposing sentence, Judge Carpeneti did not give sufficient weight to his potential for rehabilitation. This claim is without merit. Judge Carpeneti specifically reviewed each of the *Chaney* factors.[4] He found that deterrence of others and reaffirmation of societal norms were overwhelming considerations where deadly force was directed at a

---

**2.** At the time of Smith's offense, AS 12.55.-155(c)(13) provided:

> The defendant knowingly directed the conduct constituting the offense at an active officer of the court or at an acting or former judicial officer, prosecuting attorney, law enforcement officer, correctional employee, or fireman during or because of the exercise of his official duties.

**3.** Judge Carpeneti also properly concluded that the finding of this aggravating factor did not depend on whether Smith had actually aimed at

Bowman. The statute requires merely that the conduct that constitutes the assault was knowingly directed at a law enforcement officer. *See* former AS 12.55.155(c)(13). *See also* AS 11.81.-900(b)(12) (defining deadly force as including the intentional discharge of a firearm "in the direction of another person or in the direction in which another person is believed to be.")

**4.** *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

police officer. It is well-settled that the sentencing court determines the priority and relative weight of the *Chaney* criteria. *LaLonde v. State*, 614 P.2d 808, 811 (Alaska 1980); *Hawley v. State*, 648 P.2d 1035, 1038 (Alaska App.1982). Having independently reviewed the sentencing record, we hold that Judge Carpeneti was not clearly mistaken in sentencing Smith to four years with one and one-half years suspended. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.